# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN L. GREENFIELD,<br><br>                        Plaintiff,<br>vs.<br><br>UNITED STATES MARINE CORPS; CIVILIAN HUMAN RESOURCES OFFICE, MARINE CORPS BASE CAMP PENDLETON; RAY MABUS, SECRETARY OF THE NAVY; and DOES 1 through 100 inclusive,<br><br>                        Defendants. | CASE NO. 12CV311 JLS (POR)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF No. 3) |

      Presently before the Court is Plaintiff Kevin L. Greenfield's ("Plaintiff") ex parte application for temporary restraining order ("TRO"). (TRO, ECF No. 3) Also before the Court are Defendants' opposition, (Resp. in Opp'n, ECF No. 6), and Plaintiff's reply in support, (Reply in Supp., ECF No. 8). Having considered the parties' arguments and the law, the Court **DENIES** Plaintiff's application.

## BACKGROUND[1]

      Until recently, Plaintiff was employed as a civilian Captain in the Camp Pendleton Police Department, holding the position of Operations Officer. Beginning approximately one year after he was hired, from about April 2009 to July 2010, Plaintiff was allegedly subjected to a hostile work environment. Specifically, as alleged in the complaint, Plaintiff experienced acts of work-place violence that were not acted upon despite Plaintiff's reports to supervisors; his authority was

---

[1] The facts from the Background section are taken from Plaintiff's complaint, (Compl., ECF No. 1), unless otherwise indicated.

1 undermined by certain Civilian Police Lieutenants, who directed malicious and racist statements
2 toward and about Plaintiff; he was denied a salary adjustment though similarly situated white
3 police officers were allowed to have their salaries reviewed and adjusted; and his cell phone was
4 stolen in an attempt to inhibit his job performance.

5 In light of all this, Plaintiff began pursuing a hostile work environment claim by filing an
6 Equal Employment Opportunity ("EEO") complaint. Soon after initiating the investigation of his
7 EEO complaint, however, Plaintiff became the subject of several internal investigations regarding
8 his job performance. Ultimately, in July 2011, he was placed on administrative leave pending an
9 investigation, and, on December 16, 2011, Plaintiff was served with a notice of proposed removal
10 from federal service. Hence, the instant action seeking, *inter alia*, to enjoin Defendants from
11 terminating Plaintiff's employment. But, before the Court had a chance to rule on Plaintiff's
12 application for a TRO to enjoin his termination, Defendants removed him from service.

## LEGAL STANDARD

14 Temporary restraining orders are governed by the standard applicable to preliminary
15 injunctions. *See* Fed. R. Civ. P. 65. A plaintiff seeking a preliminary injunction must establish
16 that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence
17 of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the
18 public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Sierra*
19 *Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). Although all four factors must be met,
20 they operate on a sliding scale. "Under this approach, the elements of the preliminary injunction
21 test are balanced, so that a stronger showing of one element may offset a weaker showing of
22 another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For
23 example, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of
24 likelihood of success on the merits." *Id.* at 1135.

25 A preliminary injunction is an "extraordinary remedy that may only be awarded upon a
26 clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The typical
27 preliminary injunction is prohibitory, and seeks to "maintain the status quo pending a trial on the
28 merits." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006); *see also Marlyn*

*Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–89 (9th Cir. 2009). A mandatory injunction, in contrast, "orders a responsible party to take action . . . [and] goes well beyond simply maintaining the status quo." *Marlyn Nutraceuticals*, 571 F.3d at 879 (citations omitted) (internal quotation marks omitted). Mandatory injunctions are particularly disfavored, and should not be granted "unless extreme or very serious damage will result." *Id.*

## ANALYSIS

**1. Mootness**

Defendants' primary argument for why Plaintiff's application should be denied is that it is moot. (Resp. in Opp'n 3, ECF No. 6) Plaintiff's application for a TRO seeks to enjoin Defendants from terminating Plaintiff:

> Plaintiff requests the Court . . . enjoin and restrain Defendants, its agents, servants, and employees from engaging in, committing, or performing, directly or indirectly, from terminating Plaintiff from his Federal Employment as a Civilian Police Captain in the United States Marine Corps Police Department, Camp Pendleton, until the conclusion of the litigation in this matter.

(TRO 3, ECF No. 3) But, effective February 28, 2012, Plaintiff was terminated.[2] (Resp. in Opp'n 3, ECF No. 6) And so, according to Defendants, "injunctive relief is no longer available to Plaintiff," and his "application must be denied as moot." (*Id.*) Plaintiff counters that "[t]o allow Defendants to simply resolve the matter of the TRO by terminating Plaintiff prior to this Court's adjudication of the matter" would be inequitable. (Reply in Supp. 2, ECF No. 8)

The mootness doctrine "requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011).

---

[2] The order of events is worth remarking on: Plaintiff filed his complaint on February 6, 2012. (Compl., ECF No. 1) On February 22, 2012, Plaintiff filed the instant application for a TRO, (TRO, ECF No. 3), providing notice to Defendants the following day, (Decl. of Michael P. Duff ¶ 4, ECF No. 4). The Court directed Defendants to respond in an Order dated February 27, 2012. (Order, Feb. 27, 2012, ECF No. 5) Then, on February 28, 2012, before Defendants had filed their opposition brief, "the final decision on Plaintiff's removal was issued by the Command." (Resp. in Opp'n 3, ECF No. 6) Defendants assert that, for various reasons, "neither the Command nor the U.S. Attorney's Office became aware of the Court's Order [directing Defendants to respond] until Wednesday, February 29, 2012 (one day after Plaintiff's removal became final on February 28, 2012)." (*Id.* at 3 n.1)
   Among the various reasons for why Defendants may not have been aware of the pending TRO could have been the fact that Plaintiff apparently has not yet served his complaint in compliance with Federal Rule of Civil Procedure 4(i). Nevertheless, Defendants do not assert that they had no notice of Plaintiff's application for a TRO. Plaintiff is advised, however, to comply with Rule 4 in order to avoid dismissal of the entire action on procedural grounds.

1  Thus, "if events subsequent to the filing of the case resolve the parties' dispute, [a court] must
2  dismiss the case as moot." *Id.*; *see also Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377,
3  1379 (9th Cir. 1978) ("Where the activities sought to be enjoined have already occurred, and the
4  [court] cannot undo what has already been done, the action is moot."). Importantly, however, "a
5  case is not moot if the court has the ability to undo the effects of conduct that was not prevented by
6  the time of the decision." *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986) (internal quotation
7  marks omitted).

8  Here, Plaintiff's application for a TRO seeks only to enjoin Defendants from terminating
9  him. (TRO 3, ECF No. 3) Because his termination has already occurred, the specific relief
10 requested would appear to be moot. *See Bergland*, 576 F.2d at 1379. However, "'[i]t has long
11 been established that where a defendant with notice in an injunction proceeding completes the acts
12 sought to be enjoined the court may by mandatory injunction restore the status quo.'" *Garcia*, 805
13 F.2d at 1402 (quoting *Porter v. Lee*, 328 U.S. 246, 251 (1946)). As such, the Court interprets
14 Plaintiff's application as requesting the Court to maintain the status quo, rather than specifically
15 requesting it to enjoin Plaintiff's termination, which has already occurred. Interpreted this way,
16 Plaintiff's application is not moot.

17 "The status quo is the last uncontested status which preceded the pending controversy."
18 *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963) (internal quotation
19 marks omitted). Here, the status quo preceding Plaintiff's complaint and application was that
20 Plaintiff was employed as a Civilian Police Captain in the U.S. Marine Corps Police Department at
21 Camp Pendleton, but that he was on administrative leave. (Compl. ¶ 40, ECF No. 1); (TRO 2,
22 ECF No. 3) At the time the TRO application was filed, the decision regarding Plaintiff's proposed
23 termination was still pending. (TRO 2, ECF No. 3) Thus, the Court views Plaintiff's application
24 as requesting to maintain this status quo: reinstatement into his position as a Civilian Police
25 Captain, but maintenance of his status as being on administrative leave. *See Garcia*, 805 F.2d at
26 1403. Accordingly, the relief requested is still available to Plaintiff, and this application is not
27 moot. *Id.* at 1404 ("This appeal is not moot because the termination is not irreversible.").
28 //

**2. Exhaustion of Administrative Remedies**

*A. Legal Standard*

In order for the Court to have subject matter jurisdiction over Plaintiff's Title VII claim, Plaintiff must have exhausted his administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). "Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC . . . thereby affording the agency an opportunity to investigate the charge." *Id.* (citing 42 U.S.C. § 2000e-5(b)).

A court's "[s]ubject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *Id.* at 1100 (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). In determining the scope of a court's jurisdiction, a court must "construe the charge liberally," *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990), and may consider "allegations occurring not only before, but also after the filing of [the] EEOC charge," *id.* at 1456–57 (citing *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir. 1982)); *see also Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973) ("When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.").

*B. Analysis*

Here, Plaintiff filed his first EEO complaint in December 2010, and a second EEO complaint in December 2011. (Compl. ¶ 30, ECF No. 1) Neither party has furnished copies of the EEO complaints to enable the Court to evaluate the appropriate scope of Plaintiff's claim.

According to Defendants, Plaintiff's prior EEO complaints "do not suffice for exhaustion as those complaints alleged discrimination and reprisal stemming from different adverse actions, and both EEO complaints were filed prior to Plaintiff's removal from employment." (Resp. in Opp'n 4, ECF No. 6) Moreover, Defendants contend "Plaintiff's removal is not like or reasonably related to his prior EEO claims as these adverse actions involve completely different events, dates,

1 and different management officials, and Plaintiff's removal claim falls outside the scope of the
2 Agency's prior EEOC investigation which was limited to his claims of race discrimination and
3 retaliation." (*Id.* at 4 n.2)

4       According to Plaintiff, however, the first EEO complaint alleged that "Plaintiff's superiors
5 have cause and/ or allowed a hostile work environment based on race to exist under their
6 command, and further have caused and/ or allowed Plaintiff, and/ or Plaintiff's witnesses to be
7 retaliated against for making and/or supporting said claims." (Compl. ¶ 30, ECF No. 1)
8 Assuming the truth of this allegation and construing it liberally, Plaintiff's termination could fall
9 within the scope of his prior EEO complaints, given that he alleged retaliation for pursuing his
10 hostile work environment claims. The fact that the allegedly retaliatory termination did not take
11 place until after the EEO complaint was filed is not determinative; the scope of the charge can
12 encompass subsequent acts "like or reasonably related" to the initial allegations. *Oubichon*, 482
13 F.2d at 571.

14       At oral argument, the Court pressed both sides for more information regarding the EEO
15 proceedings, but to no avail. But it is difficult to evaluate the scope of Plaintiff's EEO complaint
16 to determine whether he satisfied the exhaustion requirement without more information regarding
17 the EEO proceedings. Because of this lack of information and because the Court ultimately finds
18 that a TRO should not be issued, *see infra*, the Court will not speculate as to whether Plaintiff has
19 exhausted his administrative remedies.[3]

20 //
21 //

---

[3] The Court also notes that in certain circumstances a court may entertain an application for a TRO even while an EEO investigation is pending:

> In a limited class of cases . . . , in which there exist both a high probability of the claimant's ultimate success on the merits and the threat of irreparable injury of the sort which the Act seeks to avoid, a Title VII claimant may personally bring suit to maintain the status quo pending disposition by the EEOC of the underlying charge of discrimination.

*Berg v. Richmond Unified Sch. Dist.*, 528 F.2d 1208, 1211 (9th Cir. 1975), *vacated on other grounds*, 434 U.S. 158 (1977). For the reasons detailed *infra*, however, those circumstances are not present here.

**3. TRO**

*A. Likelihood of Irreparable Harm*

The governing standard requires the Court to first determine whether Plaintiff is likely to suffer irreparable harm in the absence of a TRO. *See Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1135. Generally, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). And, in context of termination from employment, it has been held that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

A careful look at the alleged irreparable harm is necessary in the instant case. The requirements of a showing of irreparable harm in this context—*i.e.* a Title VII action against a government employer—were addressed by the Ninth Circuit in *Garcia*, 805 F.2d 1404–06.[4] There, the court stated that

> a plaintiff able to show only economic loss as the result of a discharge would rarely prevail in a claim for injunctive relief to retain employment. . . . This case, however, involves more than a claim of harm to the plaintiff and his family as the result of the termination. The claimed violation of the law in this case is retaliatory action for the exercise of Title VII rights, action which, if plaintiff is correct, will have a deleterious effect on the exercise of these rights by others.

*Id.* at 1405.

Although the Ninth and other circuits have recognized the "chilling effect" retaliatory discharges may have on other employees from protecting their rights under Title VII or from participating as witnesses in pending Title VII actions, none have held that as a result irreparable harm is automatically established. To the contrary, those courts that have addressed the issue have uniformly held that a Title VII plaintiff must prove the chilling effect. *See id.*; *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 512 (2d Cir. 2005) (citing *Holt v. Cont'l Grp.*, 708 F.2d 87, 91 (2d Cir. 1983)); *Adam-Mellang v. Apartment Search*, 96 F.3d 297, 301 (8th Cir. 1996); *Marxe*

---

[4] The court in *Garcia* assumed without deciding that "the heightened requirements of a showing of irreparable harm for injunctive relief against the government enunciated in *Sampson v. Murray*, 415 U.S. 61 (1974)," apply equally in a Title VII case against the government. *Garcia*, 805 F.2d at 1404, 1406. The court noted, however, that many of the considerations that led to the application of the heightened standard in *Sampson* were inapplicable in the Title VII context. *Id.* at 1404.

1 *v. Jackson*, 833 F.2d 1121, 1128–29 (3d Cir. 1987).

2      Here, Plaintiff not only alleges that he personally was aggrieved—monetarily and emotionally, (Compl. ¶¶ 48–49, ECF No. 1)—by his employer's conduct, but he also alleges that retaliatory actions were taken against one of his witnesses. Specifically, Plaintiff alleges that after a list of witnesses to his hostile work environment claim was inadvertently disclosed,[5] Plaintiff's superiors audited one of the witnesses' payroll records in retaliation for his participation in Plaintiff's action. (*Id.* ¶¶ 30, 32) Moreover, Plaintiff alleges that his coworkers were aware that Plaintiff's superiors actively sought out reasons to terminate Plaintiff's employment in retaliation for his pursing his hostile work environment claim. (*Id.* ¶¶ 24, 32, 36) Thus, those employees may be chilled from pursuing their own meritorious Title VII claims for fear of like retaliation. *Cf. Moore*, 409 F.3d at 512 (finding no irreparable harm where "plaintiff did not allege that other employees were aware of [the retaliation], much less intimidated by it"). Accordingly, the Court finds that the alleged third-party chilling effect constitutes an irreparable injury under the facts of this case.

### B. Likelihood of Success on the Merits

     Relevant here, Plaintiff alleges that he was retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 to e-17. To establish a Title VII retaliation claim, Plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action[,] and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "[A]n adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000). To establish causation, a plaintiff must show that engaging in the protected activity was one of the reasons for the adverse employment action and that but for such activity the adverse employment action would not have occurred. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002).

//

---

[5] Plaintiff unintentionally left a document containing the names and statements of witnesses to the racial discrimination in a printer "where everyone could view the information." (Compl. ¶ 27, ECF No. 1)

1    Here, if the Court accepts as true Plaintiff's version and interpretation of the circumstances
2 of his employment and termination, he has stated a prima facie case for retaliation.  First, Plaintiff
3 alleges that he was involved in protected activity by pursuing his hostile work environment claim
4 and by complaining to his superiors.  Second, he alleges that he suffered adverse employment
5 action by being subjected to pretextual investigations, being placed on administrative leave, and
6 being proposed for removal and ultimately removed from federal service.  Third, Plaintiff has
7 alleged a causal link between his protected activity and the adverse employment action, bolstered
8 by the proximity in time between the events.  *See Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir.
9 1988).

10    Defendants contend, however, that Plaintiff was terminated not on the basis of his race or
11 in retaliation for his protected activities, but because of his own "improper conduct."  (Resp. in
12 Opp'n 7, ECF No. 6)  In support of this argument, Defendants attached as Exhibit A to their
13 opposition the February 28, 2012, Notice of Decision to Effect Removal From Federal Service,
14 explaining that Plaintiff's removal was based on his "Violation of the Standards of Conduct
15 (Ethics) with two specifications, Failure to Properly Protect Personal Identification Information
16 (PII) with one specification, and Lack of Candor during an Official Administrative Inquiry with
17 [two[6]] specifications."  (Ex. A at 1, ECF No. 6)  Although the letter does not address with
18 specificity the conduct leading to Plaintiff's removal, it exhaustively explains the rationale for
19 terminating Plaintiff in light of the listed violations.  For example, it states that Plaintiff's
20 violations preclude him from maintaining the role of a supervisory police officer because his
21 supervisors can no longer trust him to abide by and enforce the rules and regulations of the U.S.
22 Marine Corps.  Moreover, because Plaintiff did not accept responsibility for his actions, his
23 potential for rehabilitation was low, necessitating his permanent removal from employment.  (*Id.*
24 at 2–5)  As such, Defendants contend that Plaintiff's removal was based on legitimate, non-
25 discriminatory, non-retaliatory reasons.
26 //
27

28    [6] Though Plaintiff was charged with Lack of Candor with three specifications, only two were found to be supported by a preponderance of the evidence.  (Ex. A at 2, ECF No. 6)

1        Despite the apparently legitimate rationale for termination presented by Defendants,
2 Plaintiff asserts that his "superiors consistently look[ed] through Plaintiff's training records,
3 looking for reasons to terminate Plaintiff's employment with the police department," (Compl. ¶ 24,
4 ECF No.1), suggesting that Defendants' rationale is merely pretext.  Plaintiff notes the timing of
5 the investigation and charges against him, asserting that whatever the alleged basis for the charges,
6 they were really brought only in retaliation for his protected activity.

7        With such a contested factual scenario, "a court should not grant [injunctive relief] unless
8 the moving party makes a further showing sufficient to demonstrate that he will probably succeed
9 on the merits."  *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1089 (9th Cir. 1972); *see also Dymo*
10 *Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) ("[O]n application for
11 preliminary injunction the court is not bound to decide doubtful and difficult questions of law or
12 disputed questions of fact.").  Based on the contested facts present here, the Court cannot conclude
13 that Plaintiff is likely to succeed on the merits; it seems at least as likely that Defendants will
14 prevail.

15 *C. Balance of Equities & Public Interest*

16        In determining whether to grant preliminary relief, a court should consider the relative
17 impact any injunction would have on the defendant if it were issued, or on the plaintiff if it were
18 not.  *Friends of the Earth v. Coleman*, 518 F.2d 323, 330 (1975).  The Court also considers the
19 public interest, including whether a TRO would further the purposes of Title VII.

20        Defendants argue this balance tips in its favor because the military's interest in preventing
21 the type of "inappropriate behavior" that Plaintiff engaged in outweighs Plaintiff's individual
22 interest in not being terminated.  (Resp. in Opp'n 8, ECF No. 6)  Defendants' contentions focus on
23 the inappropriateness of allowing Plaintiff to "continue working as a supervisory police officer
24 despite the Command's belief that Plaintiff engaged in . . . highly improper conduct." (*Id.*)

25        As Plaintiff points out, however, he is not requesting to be placed back in an active role as
26 a Civilian Police Captain, but rather to remain on administrative leave.  (Reply in Supp. 3, ECF
27 No. 8)  Under these circumstances, it would appear the balance tips toward Plaintiff.  A TRO
28 would not require that Defendants place Plaintiff back in an active supervisory police officer role;

rather, Plaintiff would retain his passive role on administrative leave,[7] avoiding the issues Defendants raise.

In response to the Court's questioning at oral argument, however, Defendants raised other compelling concerns regarding a TRO that would place Plaintiff back on administrative leave. Defendants point out that if Plaintiff is on paid administrative leave, Defendants cannot hire a replacement to fill his position. This would leave Defendants short one civil police officer throughout the pendency of this lawsuit, which is still in its infancy. The Court agrees that this is not only detrimental to Defendants' operations, but is also against the public's interest.

## CONCLUSION

Balancing the four factors analyzed above, the Court finds that a TRO is not warranted under these circumstances. Though Plaintiff has demonstrated an irreparable harm, that third-party harm is not so strong to offset Plaintiff's weaker showing as to the likelihood of success on the merits and the fact that the balance of equities appears to fall in Defendants' favor. Thus, Plaintiff's ex parte application for a TRO is **DENIED**.

**IT IS SO ORDERED**.

DATED: April 4, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge

---

[7] As the parties clarified at oral argument, while on "administrative leave" Plaintiff collects a paycheck, receives benefits, and participates in trainings in order to maintain his qualifications to be a civil police captain. He otherwise does not have an active police officer role.